**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**ORLANDO DIVISION**

**CASE NO.: 26-CV-1263**

**LINDSEY BROOKE ISAACS,**

       Plaintiff,

v.

**TIFFANY JATEFF, individually,**
and **JOSHUA BUDAY, individually,**

       Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Lindsey Brooke Isaacs ("Plaintiff" or "Ms. Isaacs"), by and through her undersigned attorneys, files this Complaint against Defendants Tiffany Jateff ("Sgt. Jateff") and Joshua Buday ("Sgt. Buday") (collectively, "Defendants"), individually, and alleges as follows:

### INTRODUCTION

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and Florida common law arising from the false arrest, wrongful imprisonment, and malicious prosecution of Plaintiff Lindsey Brooke Isaacs. Ms. Isaacs, a 23-year-old woman with no criminal history, was arrested, jailed for thirteen days without bond, and charged with eight felonies – including three counts of vehicular homicide – for a fatal crash she had nothing to do with. Defendants fabricated evidence of vehicle damage, swore to false statements in an affidavit for arrest warrant and at a bond/pre-trial detention hearing, and ignored readily available exculpatory evidence – all in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Florida law.



## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983.

3. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the federal claims. Pre-suit notice requirements of Florida Statute § 768.28(6) are not required for claims against officers sued exclusively in their individual capacities. *Hansen v. State*, 503 So. 2d 1324, 1326 (Fla. 1st DCA 1987); *Lloyd v. Ellis*, 520 So. 2d 59, 60 (Fla. 1st DCA 1988); *Medberry v. McCallister*, 937 So. 2d 808 (Fla. 1st DCA 2006).

4. Venue is proper in the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiff's claims occurred in Volusia County, Florida, which falls within this District and Division.

## PARTIES

5. Plaintiff Lindsey Brooke Isaacs is a natural person and citizen of the State of Florida who, at all times relevant to this Complaint, resided in Palm Coast, Flagler County, Florida.

6. Defendant Tiffany Jateff is a natural person who, at all times relevant to this Complaint, was employed as a law enforcement officer by the Florida Highway Patrol, holding the rank of Corporal and later Sergeant. Sgt. Jateff was the lead investigator in FHP Case No. FHP25ON0469308. She is sued in her individual capacity for actions taken under color of state law.

7. Defendant Joshua Buday is a natural person who, at all times relevant to this Complaint, was employed as a law enforcement officer by the Florida Highway Patrol, holding the



rank of Sergeant. Sgt. Buday is sued in his individual capacity for actions taken under color of state law.

8. At all times material hereto, Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

### The Crash on Interstate 4

9. On October 4, 2025, at approximately 9:53 p.m., a multi-vehicle crash occurred on eastbound Interstate 4 near mile marker 107 in Volusia County, Florida, resulting in three fatalities and one serious bodily injury.

10. The crash was caused by a Dodge Durango traveling at approximately 112 miles per hour that struck a Suzuki GSX1300R motorcycle and a Ford Focus sedan, initiating a chain-reaction collision that also involved a Honda Pilot.

11. The driver of the Suzuki motorcycle, Joaquin Deno, age 54, was killed. The driver of the Honda Pilot, Jorge Salinas, and his front-seat passenger, Nancy Salinas, were also killed. The driver of the Ford Focus, Mariliz Barrios-Barrios, sustained serious bodily injury.

12. The Durango that caused the crash fled the scene.

### Ms. Isaacs' Innocence and Location at the Time of the Crash

13. Plaintiff Lindsey Brooke Isaacs owned and drove a black 2025 Dodge Durango bearing Florida license plate RJVN10.

14. On the evening of October 4, 2025, Ms. Isaacs was returning home to Palm Coast, Florida, after visiting a friend's store, the Vape Up Café, in Davenport, Florida. Surveillance video from the Vape Up Café shows Ms. Isaacs departing at 8:22 p.m.



15. A Flock license plate reader camera captured Ms. Isaacs' Durango traveling eastbound on Interstate 4 at the Seminole/Volusia County line at 9:51 p.m. – approximately three miles west of the crash scene. Ms. Isaacs was traveling home and was miles away from the crash scene when it occurred at 9:53 p.m.

16. Ms. Isaacs was not involved in the crash in any way.

17. Ms. Isaacs' black 2025 Dodge Durango was in immaculate, showroom-quality condition with absolutely no damage whatsoever – no scrapes, scuffs, dents, paint transfer, or any other evidence of involvement in a collision.

### The True At-Fault Driver: Alisa Lee Montalvo

18. The actual driver who caused the fatal crash was Alisa Lee Montalvo, age 47, of Deltona, Florida, who was driving a maroon 2021 Dodge Durango bearing Florida license plate 4589XQ.

19. Montalvo was a family friend of Joaquin Deno and was traveling with the group of motorcyclists after attending a birthday party at the Elev8 Fun Center in Sanford, Florida.

20. Montalvo's maroon Durango was traveling at 112 miles per hour, as confirmed by its Event Data Recorder ("EDR"), five seconds before the crash.

21. After the crash, Montalvo briefly stopped on the right shoulder, then fled the scene. She subsequently had her vehicle's driver-side doors replaced, removed the curtain airbag, stuffed the seat airbag back into the seat, and purchased four new tires – all in an effort to conceal evidence of her involvement.

### Exculpatory Evidence Available to Investigators from the Outset

22. On the night of the crash, a second independent eyewitness, James Imundo, called Volusia County's 911 dispatch center and reported that a "maroon" Dodge Durango driving like a



"mad person" had caused the crash. Imundo provided the first three characters of the maroon Durango's license plate: "458."

23. Montalvo's Durango license plate is 4589XQ – matching Imundo's partial identification. Ms. Isaacs' license plate, RJVN10, shares no characters with Imundo's description.

24. The 911 call from Imundo was available in Volusia County dispatch records at all times during the investigation. Defendants failed to review or follow up on this readily accessible exculpatory evidence.

25. FHP also had available the Computer Aided Dispatch ("CAD") reports from both FHP and the Volusia County Sheriff's Office, which contained information about the maroon Durango. Defendants never reviewed these records before charging Ms. Isaacs.

26. Defendants never searched Flock camera records for any Durango other than a black one, despite the contradictory eyewitness description. Had they done so, they would have immediately identified Montalvo's maroon Durango.

27. Defendants never read the EDR on Ms. Isaacs' Durango, which would have shown no collision event, further proving her non-involvement in the crash.

### Sgt. Jateff's Deficient Investigation and False Statements

28. On the night of October 4 – 5, 2025, Sgt. Jateff (then Corporal) located Ms. Isaacs' black Dodge Durango parked outside her apartment at the Integra Woods complex in Palm Coast, Florida.

29. Sgt. Jateff and Trooper Nicholas Schmeider confronted Ms. Isaacs at approximately 3:00 a.m. Ms. Isaacs emphatically denied any involvement, stating: "I didn't hit anything," "I didn't go anywhere after 6:30 PM," "When I left for one hour my car was perfectly fine," and "I'm a good driver."



30. Despite Ms. Isaacs' denials and the lack of any visible damage to her vehicle, Sgt. Jateff seized the Durango and had it impounded as evidence.

31. Sgt. Jateff never conducted a formal interview of Ms. Isaacs, never Mirandized her, and never took a recorded statement.

32. Ms. Isaacs' Durango remained in exclusively in FHP's custody for over six months without charges being filed. Sgt. Jateff and Sgt. Buday had continuous access to observe the Durango's true condition.

33. On or about February 5, 2026, Ms. Isaacs, through counsel, filed a Replevin action in Volusia County seeking return of her impounded vehicle because no charges had been filed.

34. On April 16, 2026, Sgt. Jateff obtained an arrest warrant for Ms. Isaacs by submitting a sworn Affidavit for Arrest Warrant to a judge in the Circuit Court of the Seventh Judicial Circuit, Volusia County, Florida. *See* copy of this Affidavit attached hereto. The Affidavit contained the following material false statements, among others:

   a. "The left side of the Durango struck the right side of a Ford Focus sedan (Florida tag IVTZ24) (Focus)."

   b. "The front left side of the Durango has scrape marks and scuffs near the left front tire consistent with that tire making contact with the Focus."

   c. "Measurements taken of the left-side tires on the Durango are of consistent height and width to tire marks observed and measured on the right-side of the Focus."

   d. "The marks located on the left side of the Durango were consistent with the damage located on the right side of the Focus."

   e. Sgt. Jateff further stated that she and Trooper Schmeider "observed what appeared to be 'smudge or rub marks' in the area(s) where the fresh damage was located on the Durango, appearing that it was attempted to be cleaned or wiped away prior to our arrival."

35. Each of these statements was false. There was no damage whatsoever on Ms. Isaacs' 2025 Dodge Durango. There were no scrape marks, no scuffs, no paint transfer, and no tire



marks. The vehicle was in immaculate condition. This has been conclusively documented through extensive video and photographic evidence. If Sgt. Jateff truly observed damage, then one would expect photographs, measurements, paint transfer samples, or a forensic report – yet none exist. This supports the inference that Jateff's claims that the vehicle was damaged were intentional falsehoods, not merely mistakes.

36. Sgt. Jateff also omitted the following material exculpatory information from her Affidavit for Arrest Warrant:

   a. The existence of James Imundo's 911 call describing a "maroon" Durango with a partial plate of "458";

   b. The existence of any alternative suspect or alternative-colored Durango;

   c. The fact that Ms. Isaacs' Flock camera hit placed her three miles west of the crash scene two minutes before it occurred – meaning she was ahead of and past the scene;

   d. The fact that no formal interview or recorded statement was ever taken from Ms. Isaacs;

   e. The fact that the EDR data was never analyzed despite the vehicle being in FHP custody for over six months.

37. The Affidavit for Arrest Warrant charged Ms. Isaacs with eight felonies: three counts of Leaving Scene of a Crash with Death (§ 316.027(2)(c)), one count of Leaving Scene of a Crash with Serious Injury (§ 316.027(2)(b)), three counts of Vehicular Homicide (§ 782.071(1)(a)), and one count of Reckless Driving Causing Serious Injury (§ 316.192(3)(c)2). If convicted, Ms. Isaacs faced the possibility of life imprisonment.

### Ms. Isaacs' Arrest and Detention

38. On April 17, 2026, Ms. Isaacs surrendered herself into custody at the Volusia County Branch Jail at 2:00 p.m. She was booked on a no-bond warrant.

39. The warrant was signed by a judge who relied upon the false statements in Sgt. Jateff's Affidavit.


**BRILL** **RINALDI**
THE LAW FIRM
FOR PEOPLE. FOR JUSTICE.

**BRILL RINALDI.COM**
**CORAL GABLES, FLORIDA   |   WESTON, FLORIDA   |   DAYTONA BEACH, FLORIDA   |   KUMANOVO, MACEDONIA**

**7 | PAGE**

**Sgt. Buday's False Testimony at the Bond/Pre-trial Detention Hearing**

40. Following her arrest, Ms. Isaacs' counsel sought a bond hearing and the State sought a pre-trial detention hearing.  The two hearings were heard simultaneously.  At the hearing, Sgt. Buday testified under oath on behalf of the State. Sgt. Buday was not merely a "witness" but was testifying in his capacity as an investigating officer presenting the State's case.

41. At the hearing, Sgt. Buday reiterated and adopted the same false statements made by Sgt. Jateff in the Affidavit – specifically testifying that Ms. Isaacs' Durango had damage consistent with being involved in the crash, including scrape marks, scuffs, and rub marks consistent with the collision.

42. Sgt. Buday's sworn testimony was false. There was no damage on Ms. Isaacs' Durango. Sgt. Buday either knew his testimony was false or acted with reckless disregard for its truth or falsity. Sgt. Buday adopted Sgt. Jateff's false statements without any independent basis for believing them to be true, which constitutes reckless disregard for the truth.  Sgt. Buday supervised or oversaw aspects of the investigation, had access to the Durango, and had an independent duty to verify the accuracy of statements he presented under oath.   Sgt. Buday had access to the same dispatch records, CAD reports, and Flock camera data that were available to all investigators.  Sgt. Buday was aware of or should have been aware of the Imundo 911 call describing a maroon Durango.  Sgt. Buday personally observed or had the opportunity to observe Ms. Isaacs' undamaged vehicle during the many months the vehicle was in FHP exclusive custody.  Sgt. Buday's rank and supervisory position made reliance on then Corporal Jateff unreasonable. Indeed, as a Sergeant, Buday had a duty to independently verify the facts before swearing to them under oath at a hearing that would determine whether a citizen remained incarcerated. His failure to conduct even rudimentary



inquiry constitutes reckless disregard. Sgt. Buday was aware of the 193-day delay between vehicle seizure and charges, the absence of any forensic report, and the existence of contradictory witness reports – all of which would have put a reasonable supervisor on notice that the damage claims required independent verification.

43. On cross examination of Buday, Ms. Isaacs' criminal defense attorney showed Buday five photographs of Ms. Isaacs' Durango depicting no damage to the vehicle. Buday persisted in falsely reiterating that the Durango had damage as described in Janeff's Affidavit. The defense attorney also attempted to establish that Ms. Isaacs was well past the crash scene when the crash occurred. Buday resisted those efforts.

44. The judge, relying on Jateff's false statements in the sworn Affidavit and Buday's false testimony at the bond/pre-trial detention hearing, found that the State met its burden for pretrial detention and held Ms. Isaacs without bond.

45. Ms. Isaacs was incarcerated for thirteen days in the Volusia County jail, including time in solitary confinement.

### Favorable Termination

46. Fortunately, Assistant State Attorney Mike Willard, present at the combined bond/pre-trial detention hearing on behalf of the State, found the cross examination conducted by Ms. Isaacs' defense attorney, and the five photographs the attorney introduced, to be compelling.

47. Additionally, following the hearing, Ms. Isaacs' counsel provided ASA Willard with 35 additional photographs of Ms. Isaacs' undamaged Durango. The additional photographs buttressed Willard's finding.



48. Moreover, Ms. Isaacs' defense attorney had, before the hearing, filed a Motion to Quash the Arrest Warrant, which Motion set out in detail the true evidence proving Ms. Isaacs' innocence. Mr. Williard found the Motion likewise compelling.

49. Appropriately alarmed at the discrepancies and failings in Jateff's and Buday's investigation the cross examination of Buday, the photographs, and the Motion to Quash all evidenced, ASA Willard requested on or about April 27, 2026, crash reconstruction and investigative support from FHP's Specialized Investigation and Reconstruction Team ("SIRT").

50. On May 6, 2026, State Attorney personnel met with SIRT.

51. As reflected in the Affidavit for Arrest Warrant for Alisa Lee Montalvo – a copy of which is attached hereto – SIRT assumed control, conducted the investigation that Defendants Jateff and Buday should have, and identified and arrested the actual perpetrator. As a first step in their properly conducted investigation, SIRT inspected Ms. Isaacs' Durango and expressly found that it "did not find any damage on this vehicle suggest[ing] it was involved in a crash with another vehicle." Affidavit at pg. 3. SIRT further found "red or maroon paint transfer" on the Ford Focus – not black paint transfer. *Id.* at pg. 4.

52. On May 22, 2026, the State of Florida formally filed a No Information in Case Number 2026-102441-CFDL, declining to prosecute Ms. Isaacs on all eight charges. The State Attorney declined prosecution because it determined that Ms. Isaacs was innocent, that the evidence conclusively established there existed a different perpetrator, and that the charges were factually baseless. The termination constituted a bona fide termination in Ms. Isaacs' favor, was indicative of her innocence, and was not the result of any compromise, plea bargain, settlement, or procedural technicality.



53. The No Information was filed because the State Attorney determined that Ms. Isaacs was innocent, as confirmed by the simultaneous arrest and charging of Alisa Lee Montalvo. Later that same evening, Alisa Lee Montalvo was arrested and charged with nine felonies arising from the same crash, including the same charges previously levied against Ms. Isaacs plus one additional count of Tampering with or Fabricating Evidence (Florida Statute § 918.13(1a)).

## Damages Suffered by Ms. Isaacs

54. As a direct and proximate result of Defendants' actions, Ms. Isaacs suffered the following injuries and damages:

   a. Wrongful incarceration for thirteen days, including time in solitary confinement, cavity searches, assault, battery, and mold, mollusk, and maggot infested food;

   b. Severe emotional distress, anxiety, fear, humiliation, and mental anguish;

   c. Reputational harm, including being publicly branded a criminal responsible for three deaths;

   d. Social ostracism, including her own doctor refusing to treat her because "she was a criminal";

   e. Media harassment, including reporters showing up at her home;

   f. Loss of her vehicle for about eight months during impoundment;

   g. The threat of life imprisonment hanging over her for weeks;

   h. Civil lawsuits filed against her by the estates of the decedents and injured party based on the false charges;

   i. Attorneys' fees and costs incurred in defending against the false criminal charges;

   j. Post-traumatic stress and ongoing psychological trauma.



**COUNT I – MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983 (Fourth Amendment – Unreasonable Warrant-based Seizure) (Against Defendant Jateff, Individually)**

55. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 54 above as though fully set forth herein.

56. At all times relevant hereto, Defendant Jateff acted under color of state law within the meaning of 42 U.S.C. § 1983.

57. The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects individuals from unreasonable seizures of their persons.

58. "[M]alicious prosecution is a 'shorthand way of describing' certain Fourth Amendment claims, such as seizure pursuant to legal process." *Gervin v. Florence*, 139 F.4th 1236, 1247 (11th Cir. 2025) (citing *Williams v. Aguirre,* 965 F.3d 1147, 1157 (11th Cr. 2020).

59. As the *Gervin* Court noted,

> to prove a Fourth Amendment malicious-prosecution claim in our Circuit, a plaintiff must establish four elements: (1) the plaintiff was seized under legal process; (2) the legal process justifying the plaintiff's seizure was constitutionally infirm; (3) the suit or proceeding terminated in the plaintiff's favor; and (4) the seizure would not otherwise be justified without legal process.

*Gervin v. Florence* at 1248 (citations omitted).

60. As to the first element, Defendant Jateff "seized [Ms. Isaacs] under legal process 'by seeking and obtaining the warrant[] that led to [Ms. Isaacs'] arrest." *Id.* (citation omitted). Defendant Jateff played a material role in Ms. Isaac's arrest.

61. As to the second element, Ms. Isaac's

> seizure was constitutionally infirm. A plaintiff may prove that element by, among other means, showing (a) that the defendant "intentionally or recklessly made misstatements or omissions necessary to" support the legal process that resulted in or continued the plaintiff's seizure, … and (b) that



those misstatements or omissions were material, meaning "probable cause would be negated if the offending statement[s] w[ere] removed or the omitted information included."

*Id.* at 1248-49.

62. Where a magistrate's probable cause determination "is predicated solely on a police officer's false statements," the "legal process itself [has] go[ne] wrong," and the warrant "do[es] nothing to satisfy the Fourth Amendment's probable-cause requirement" because the judge was presented with materially incorrect information. *Land v. Sheriff of Jackson Cnty. Fla.*, 85 F.4th 1121 (11th Cir. 2023) (quoting *Manuel v. City of Joliet*, 580 U.S. 357 (2017)).

63. Defendant Jateff intentionally or recklessly made material false statements in her sworn Affidavit for Arrest Warrant – specifically, that Ms. Isaacs' Durango had "scrape marks and scuffs near the left front tire consistent with that tire making contact with the Focus" and that "marks located on the left side of the Durango were consistent with the damage located on the right side of the Focus" – when in truth there was no damage on the vehicle whatsoever. These false statements were necessary and indispensable to the finding of probable cause. When Defendant Jateff's false statements are excised from the Affidavit for Arrest Warrant the remaining allegations do not support a finding of probable cause and the Arrest Warrant is rendered void. After excising the false statements from Affidavit for Arrest Warrant the only facts that remain are: (a) Ms. Isaacs owns a black Dodge Durango; (b) the crash involved a Dodge Durango; and (c) the Flock camera shows Ms. Isaacs traveling eastbound on I-4 at 9:51 p.m. near the Seminole/Volusia County line. A Flock hit three miles *away from* the crash site two minutes *before* the crash demonstrates Ms. Isaacs was *ahead of* the crash location when it occurred, meaning the Flock hit is



exculpatory, not inculpatory. No reliable evidence linked a *black* Durango, let alone Ms. Isaac's black Durango, to the crash – multiple eyewitnesses and physical evidence (red/maroon paint transfer on the Focus) consistently identify a maroon vehicle. The remaining facts are categorically insufficient to establish individualized probable cause.

64. Defendant Jateff further omitted material exculpatory information from the affidavit, including and the existence of the Imundo 911 call describing a maroon Durango with the partial plate "458" and that irrefutable evidence proved that Ms. Isaacs' black Durango was miles away when the crash happened.

65. "In other words, [Jateff] 'possessed information giving rise to an exculpatory inference' but did nothing to examine the 'easily discoverable facts that would confirm or contradict that inference.'" *Gervin,* 139 at 1249 (citing *Sevigny v. Dicksey*, 846 F.2d 953, 957–58 (4th Cir. 1988) ("finding a Fourth Amendment violation where an officer 'did not avail himself of readily available information' or undertake 'rudimentary inquiries' that would have revealed the arrest to be 'factually unsupportable'").

66. But for Defendant Jateff's deliberate or reckless false statements and material omissions, no probable cause existed to arrest Ms. Isaacs, and the warrant would not have been issued. The State Attorney relied entirely and exclusively on Sgt. Jateff's sworn Affidavit for Arrest Warrant and conducted no independent investigation before the warrant issued. The State Attorney's role was merely ministerial – presenting the affidavit to a judge. The prosecutor was affirmatively misled by the false statements in the Affidavit for Arrest Warrant as it contained the only claimed physical evidence linking Ms. Isaacs to the crash, and that the prosecutor had no other basis to evaluate the charges. The State Attorney's subsequent reaction is evidence of its non-independence.  Indeed, the fact that ASA Willard



"detected alarming discrepancies" and immediately called in SIRT demonstrates that once the State Attorney conducted any independent review, the case collapsed – proving the prosecution was sustained solely by Defendants' fabricated evidence.

67. "If a plaintiff establishes that a defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process, he has also established that the defendant instituted criminal process against him with malice and without probable cause." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020).

68. The State of Florida dropped all charges against Ms. Isaacs, so the third element is obviously and quickly satisfied.

69. Relative to the fourth element, Ms. Isaacs' "seizure was otherwise unjustified. Because [she] 'was detained for longer than 48 hours, [her] seizure would have been "presumptively unconstitutional" – and thus not otherwise justified – if effectuated without legal process.'" *Gervin v. Florence*, 139 F.4th at 1250 (citations omitted).

70. As a direct and proximate result of Defendant Jateff's violations of Ms. Isaacs' Fourth Amendment rights, Ms. Isaacs was unlawfully seized and imprisoned for thirteen days without bond.

71. Defendant Jateff is not entitled to qualified immunity because no reasonable officer could believe that fabricating evidence of vehicle damage and swearing to false statements in an affidavit for arrest warrant is lawful under the Fourth Amendment. Plaintiff has a "clearly established right to be free from a seizure based on intentional and material misstatements in a warrant application." *Williams v. Aguirre*, 965 F.3d 1147, 1169 (11th Cir. 2020); *Laskar v. Hurd*, 972 F.3d 1278, 1297 (11th Cir. 2020) (officers are not entitled to qualified immunity when they "knowingly or recklessly mak[e] false statements in an arrest affidavit



if such false statements were necessary to the probable cause"); *Gervin v. Florence*, 667 F. Supp. 3d 1325, 1339 (M.D. Ga. 2023), *aff'd,* 139 F.4th 1236 (11th Cir. 2025) ("No reasonable officer could have believed that she had probable cause to seek the arrest of … Plaintiff" based on false statements; qualified immunity denied).

72. Ms. Isaacs has suffered damages as described herein and is entitled to compensatory damages, punitive damages, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

### Prayer for Relief – Count I

WHEREFORE, as to Count I, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Jateff and award the following relief:

A. Compensatory damages in an amount to be determined at trial, including damages for emotional distress, mental anguish, humiliation, reputational harm, loss of liberty, and all other actual damages suffered;

B. Punitive damages in an amount sufficient to punish Defendant Jateff for her willful, wanton, and malicious conduct and to deter similar conduct in the future;

C. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

D. Pre-judgment and post-judgment interest as allowed by law; and

E. Such other and further relief as this Court deems just and proper.

### COUNT II – MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983 (Fourth Amendment – Unreasonable Seizure Following Bond/Pre-trial Detention Hearing) (Against Defendant Buday, Individually)

73. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 54 above as though fully set forth herein.

74. At all times relevant hereto, Defendant Buday acted under color of state law within the meaning of 42 U.S.C. § 1983.



75. The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects individuals from unreasonable seizures of their persons.

76. "[M]alicious prosecution is a 'shorthand way of describing' certain Fourth Amendment claims, such as seizure pursuant to legal process." *Gervin v. Florence*, 139 F.4th 1236, 1247 (11th Cir. 2025) (citing *Williams v. Aguirre,* 965 F.3d 1147, 1157 (11th Cr. 2020).

77. As the *Gervin* Court noted,

> to prove a Fourth Amendment malicious-prosecution claim in our Circuit, a plaintiff must establish four elements: (1) the plaintiff was seized under legal process; (2) the legal process justifying the plaintiff's seizure was constitutionally infirm; (3) the suit or proceeding terminated in the plaintiff's favor; and (4) the seizure would not otherwise be justified without legal process.

*Gervin v. Florence* at 1248 (citations omitted).

78. As to the first element, Sgt. Buday "took [an] 'affirmative act[] to continue [Ms. Isaacs'] seizure,' … by offering 'later testimony' at the [bond/pre-trial detention] hearing, … [which] 'continue[d] [Ms. Isaacs'] detention.'" *Id.* (citations omitted).  Defendant Buday played a material role in Ms. Isaac's detention.

79. As to the second element, Ms. Isaac's

> seizure was constitutionally infirm.  A plaintiff may prove that element by, among other means, showing (a) that the defendant "intentionally or recklessly made misstatements or omissions necessary to" support the legal process that resulted in or continued the plaintiff's seizure, … and (b) that those misstatements or omissions were material, meaning "probable cause would be negated if the offending statement[s] w[ere] removed or the omitted information included."

*Id.* at 1248-49.

80. Sgt. Buday reiterated and adopted the false statements contained in the Affidavit under oath at Ms. Isaacs' bond/pre-trial detention hearing, specifically testifying that Ms. Isaacs'



Durango had damage consistent with being involved in the crash, including scrape marks, scuffs, and rub marks consistent with the collision.

81. Defendant Buday's sworn testimony was false. There was no damage on Ms. Isaacs' Durango. Defendant Buday either knew his testimony was false or acted with reckless disregard for its truth or falsity.

82. Defendant Buday further omitted material exculpatory information from the affidavit, including and the existence of the Imundo 911 call describing a maroon Durango with the partial plate "458" and that irrefutable evidence proved that Ms. Isaacs' black Durango was miles away when the crash happened.

83. "In other words, [Buday] 'possessed information giving rise to an exculpatory inference' but did nothing to examine the 'easily discoverable facts that would confirm or contradict that inference.'" *Gervin,* 139 at 1249 (citing *Sevigny v. Dicksey*, 846 F.2d 953, 957–58 (4th Cir. 1988) ("finding a Fourth Amendment violation where an officer 'did not avail himself of readily available information' or undertake 'rudimentary inquiries' that would have revealed the arrest to be 'factually unsupportable'").

84. Defendant Buday's false and incomplete testimony was instrumental in the court's decision to deny bond, thereby prolonging Ms. Isaacs' unlawful seizure. But for Defendant Buday's deliberate or reckless false statements and material omissions, Ms. Isaacs would not have been held without bond and would not have remained imprisoned for thirteen days. But for Defendant Buday's deliberate or reckless false statements and material omissions, no probable cause existed to deny Ms. Isaacs bond and prolong her detention.

85. "If a plaintiff establishes that a defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process, he has also established that the defendant instituted



criminal process against him with malice and without probable cause." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020).

86. The State of Florida dropped all charges against Ms. Isaacs, so the third element is obviously and quickly satisfied.

87. Relative to the fourth element, Ms. Isaacs' "seizure was otherwise unjustified. Because [she] 'was detained for longer than 48 hours, [her] seizure would have been "presumptively unconstitutional" – and thus not otherwise justified – if effectuated without legal process.'" *Gervin v. Florence*, 139 F.4th at 1250 (citations omitted).

88. As a direct and proximate result of Defendant Buday's violations of Ms. Isaacs' Fourth Amendment rights, Ms. Isaacs was unlawfully seized and imprisoned for thirteen days without bond.

89. Defendant Buday is not entitled to qualified immunity because no reasonable officer could believe that providing false sworn testimony at a bond/pre-trial detention hearing to secure the continued detention of a person is lawful under the Fourth Amendment. As the *Gervin* Court aptly held:

> Officers "cannot intentionally or recklessly make material misstatements or omissions in later testimony to continue detention." *Howard*, 25 F.4th at 907 (citing *Manuel*, 580 U.S. at 369 n.8, 137 S.Ct. 911). Nor can they rely on an 'invalid charge ... to continue" a detention. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 563, 144 S.Ct. 1745, 219 L.Ed.2d 262 (2024) (citing *Rodriguez v. United States*, 575 U.S. 348, 354–57, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015)); *see Wood*, 323 F.3d at 882 (holding that "a criminal prosecution ... continued ... without probable cause" can violate the Fourth Amendment).
>     The Supreme Court held as much in 2017, when it concluded that "tainted" legal process – by "fabricated evidence," for instance – may result in a Fourth Amendment violation, "[w]hat-ever [the] precise form" of the tainted "proceeding." *Manuel*, 580 U.S. at 369 n.8, 137 S.Ct. 911. So if a jury finds that [the police officer] continued [plaintiff's] detention by recklessly making material misstatements or omissions in the probation-



revocation petition or at the probation-revocation hearing, she violated [plaintiff's] clearly established constitutional rights.

*Gervin v. Florence*, 139 F.4th at 1262 (11th Cir. 2025).

90. Ms. Isaacs has suffered damages as described herein and is entitled to compensatory damages, punitive damages, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

### Prayer for Relief – Count II

WHEREFORE, as to Count II, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Buday and award the following relief:

A. Compensatory damages in an amount to be determined at trial, including damages for emotional distress, mental anguish, humiliation, reputational harm, loss of liberty, and all other actual damages suffered;

B. Punitive damages in an amount sufficient to punish Defendant Buday for his willful, wanton, and malicious conduct and to deter similar conduct in the future;

C. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

D. Pre-judgment and post-judgment interest as allowed by law; and

E. Such other and further relief as this Court deems just and proper.

### COUNT III – FALSE ARREST UNDER FLORIDA COMMON LAW (Against Defendant Jateff, Individually)

91. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 54 above as though fully set forth herein.

92. Under Florida law, false imprisonment requires proof of: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or color of authority; and (4) which is unreasonable and unwarranted under the



circumstances. *Harder v. Edwards*, 174 So. 3d 524 (Fla. 4th DCA 2015); *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So. 2d 1266, 1268 (Fla. 4th DCA 2006).

93. Defendant Jateff caused Ms. Isaacs to be detained and deprived of her liberty for thirteen days, against her will, by procuring an arrest warrant based on fabricated evidence and false sworn statements. Defendant Jateff played a material role in Ms. Isaac's arrest. These false statements were necessary and indispensable to the finding of probable cause. When Defendant Jateff's false statements are excised from the Affidavit for Arrest Warrant the remaining allegations do not support a finding of probable cause and the Arrest Warrant is rendered void.   After excising the false statements from Affidavit for Arrest Warrant the only facts that remain are: (a) Ms. Isaacs owns a black Dodge Durango; (b) the crash involved a Dodge Durango; and (c) the Flock camera shows Ms. Isaacs traveling eastbound on I-4 at 9:51 p.m. near the Seminole/Volusia County line. A Flock hit three miles *away from* the crash site two minutes *before* the crash demonstrates Ms. Isaacs was *ahead of* the crash location when it occurred, meaning the Flock hit is exculpatory, not inculpatory. No reliable evidence linked a *black* Durango, let alone Ms. Isaac's black Durango, to the crash – multiple eyewitnesses and physical evidence (red/maroon paint transfer on the Focus) consistently identify a maroon vehicle. The remaining facts are categorically insufficient to establish individualized probable cause.

94. Because the arrest warrant was procured through deliberate falsehoods, Defendant Jateff acted without legal authority or color of authority, and Ms. Isaacs' detention was unreasonable and unwarranted. A warrant procured through deliberate fraud is a nullity and confers no legal authority whatsoever.


**BRILL RINALDI.COM**
**CORAL GABLES, FLORIDA**  |  **WESTON, FLORIDA**  |  **DAYTONA BEACH, FLORIDA**  |  **KUMANOVO, MACEDONIA**

**21 | PAGE**

95. Pursuant to Fla. Stat. § 768.28(9)(a), an officer, employee, or agent of the state may be held personally liable in tort where such officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

96. Defendant Jateff acted in bad faith, with malicious purpose, or in a manner exhibiting willful and wanton disregard for human rights, safety, or property, as evidenced by the following:

   a. Defendant Jateff fabricated evidence by swearing under oath that Ms. Isaacs' vehicle bore damage consistent with the crash when no such damage existed;

   b. Defendant Jateff deliberately omitted readily available exculpatory evidence from her affidavit, including the Imundo 911 call identifying a maroon Durango with a partial plate matching the actual perpetrator;

   c. Defendant Jateff swore to the fabricated damage allegations more than six months after seizing the vehicle – after having had the vehicle in her custody and control the entire time and thus knowing or having reason to know no damage existed;

   d. Defendant Jateff failed to perform basic investigative steps, including reviewing 911 calls, interviewing available witnesses, analyzing EDR data, and searching for alternative-colored Durangos;

   e. Defendant Jateff's actions caused a 23-year-old innocent woman with no criminal history to be jailed without bond for thirteen days, publicly branded a triple murderer, placed in solitary confinement, and threatened with life imprisonment.

97. Defendant Jateff's conduct satisfies the § 768.28(9)(a) exception to sovereign immunity, and she is personally liable to Ms. Isaacs for her false imprisonment.

98. Ms. Isaacs has suffered damages as described herein.



**Prayer for Relief – Count III**

WHEREFORE, as to Count V, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Jateff and award the following relief:

A. Compensatory damages in an amount to be determined at trial, including damages for emotional distress, mental anguish, humiliation, reputational harm, loss of liberty, and all other actual damages suffered;

B. Pre-judgment and post-judgment interest as allowed by law; and

C. Such other and further relief as this Court deems just and proper.

## COUNT IV – FALSE ARREST UNDER FLORIDA COMMON LAW (Against Defendant Buday, Individually)

99. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 54 above as though fully set forth herein.

100. Under Florida law, false imprisonment requires proof of: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or color of authority; and (4) which is unreasonable and unwarranted under the circumstances. *Harder v. Edwards*, 174 So. 3d 524 (Fla. 4th DCA 2015); *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So. 2d 1266, 1268 (Fla. 4th DCA 2006).

101. Defendant Buday caused Ms. Isaacs' continued detention by providing false sworn testimony at the bond/pre-trial detention hearing, adopting and reiterating fabricated claims that Ms. Isaacs' vehicle bore damage consistent with the crash, thereby securing the court's order denying bond and prolonging Ms. Isaacs' imprisonment. The bond denial order was thus procured without any genuine legal foundation and is legally void. The detention order following the bond/pre-trial detention hearing was a distinct legal process that, because it was procured through false testimony conferred no legal authority.



**BRILL RINALDI**
THE LAW FIRM
FOR PEOPLE. FOR JUSTICE.

**BRILL RINALDI.COM**
**CORAL GABLES, FLORIDA | WESTON, FLORIDA | DAYTONA BEACH, FLORIDA | KUMANOVO, MACEDONIA**

**23 | PAGE**

102. Defendant Buday's false testimony deprived Ms. Isaacs of her liberty against her will, without legal authority, and in a manner that was unreasonable and unwarranted under the circumstances.  Plaintiff's prolonged incarceration was secured Defendant Buday's false sworn testimony and is unreasonable and unwarranted precisely because the court's order denying bond rested on a foundation of fabrication rather than fact. The unreasonableness is inherent in the nature of the detention: depriving a person of liberty through judicial proceedings constructed on false testimony, when the truthful record would not support continued incarceration. Defendant Buday played a material role in Ms. Isaac's detention.

103. Pursuant to Fla. Stat. § 768.28(9)(a), an officer, employee, or agent of the state may be held personally liable in tort where such officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

104. Defendant Buday acted in bad faith, with malicious purpose, or in a manner exhibiting willful and wanton disregard for human rights, safety, or property, as evidenced by the following:

a. Defendant Buday provided false sworn testimony at the bond/pre-trial detention hearing, adopting the fabricated damage claims, with knowledge or reckless disregard that the statements were false;

b. Defendant Buday's false testimony directly caused an innocent 23-year-old woman with no criminal history to remain jailed without bond for thirteen days, placed in solitary confinement, and threatened with life imprisonment.

105. Defendant Buday's conduct satisfies the § 768.28(9)(a) exception to sovereign immunity, and he is personally liable to Ms. Isaacs for her false imprisonment.

106. Ms. Isaacs has suffered damages as described herein.



**Prayer for Relief – Count IV**

WHEREFORE, as to Count VI, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Buday and award the following relief:

A. Compensatory damages in an amount to be determined at trial, including damages for emotional distress, mental anguish, humiliation, reputational harm, loss of liberty, and all other actual damages suffered;

B. Pre-judgment and post-judgment interest as allowed by law; and

C. Such other and further relief as this Court deems just and proper.

## COUNT V – MALICIOUS PROSECUTION UNDER FLORIDA COMMON LAW
### (Against Defendant Jateff, Individually)

107. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 54 above as though fully set forth herein.

108. Under Florida law, the elements of malicious prosecution are: (1) the commencement or continuation of a criminal proceeding; (2) its legal causation by the defendant; (3) its bona fide termination in favor of the plaintiff; (4) the absence of probable cause; (5) malice; and (6) damages.

109. Defendant Jateff commenced criminal proceedings against Ms. Isaacs by executing a sworn Affidavit for Arrest Warrant on April 16, 2026, causing eight felony charges to be filed against Ms. Isaacs. Defendant Jateff commenced criminal proceedings against Ms. Isaacs "without a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused [wa]s guilty of the offense with which he [wa]s charged." *Perez v. City of Opa-Locka*, No. 24-CV-23636, 2025 WL 2793758, at *11 (S.D. Fla. Aug. 21, 2025), appeal dismissed, No. 25-13300, 2025 WL 3677504 (11th Cir. Dec. 18, 2025).



110. The criminal proceedings terminated in Ms. Isaacs' favor on May 22, 2026, when the State of Florida filed a No Information dismissing all charges.

111. There was no probable cause to arrest or prosecute Ms. Isaacs. The probable cause determination was based entirely on fabricated evidence and false sworn statements. Defendant Jateff knew or should have known that her application failed to establish probable cause. Additionally, or alternatively, Defendant Jateff intentionally or recklessly made the material false sworn statements and omissions necessary to support the warrant. Once the material false statements are excised from Defendant Jateff's Affidavit for Arrest Warrant, the affidavit lacked any factual basis to support probable cause. "Florida courts have made clear that the litigation privilege does not extend to malicious prosecution claims." *Perez v. City of Opa-Locka*, at \*13.

112. Defendant Jateff acted with malice, as evidenced by her deliberate fabrication of evidence, her knowing presentation of false statements under oath, her conscious disregard of readily available exculpatory evidence, and her willingness to deprive an innocent person of her liberty based on knowingly false allegations. Defendant Jateff did not merely fail to investigate – she affirmatively *excluded* known exculpatory evidence from the affidavit, which supports an inference that her purpose was to secure an arrest she knew was unjustified. Malice may also be inferred from the totality of the circumstances, including: fabrication of evidence, omission of exculpatory evidence, the 193-day delay, the absence of any legitimate investigative basis for the charges, and the filing of charges only after Ms. Isaacs asserted her rights through the Replevin action.



113. Pursuant to Fla. Stat. § 768.28(9)(a), Defendant Jateff acted in bad faith, with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property, for the same reasons set forth in herein.

114. Defendant Jateff's conduct satisfies the § 768.28(9)(a) exception to sovereign immunity, and she is personally liable to Ms. Isaacs for malicious prosecution.

115. Ms. Isaacs has suffered damages as described herein.

### Prayer for Relief – Count V

WHEREFORE, as to Count VII, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Jateff and award the following relief:

A. Compensatory damages in an amount to be determined at trial, including damages for emotional distress, mental anguish, humiliation, reputational harm, loss of liberty, and all other actual damages suffered;

B. Pre-judgment and post-judgment interest as allowed by law; and

C. Such other and further relief as this Court deems just and proper.

### COUNT VI – MALICIOUS PROSECUTION UNDER FLORIDA COMMON LAW
### (Against Defendant Buday, Individually)

116. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 54 above as though fully set forth herein.

117. Under Florida law, the elements of malicious prosecution are: (1) the commencement or continuation of a criminal proceeding; (2) its legal causation by the defendant; (3) its bona fide termination in favor of the plaintiff; (4) the absence of probable cause; (5) malice; and (6) damages.

118. Defendant Buday continued and advanced the criminal proceedings against Ms. Isaacs by providing false sworn testimony at the bond/pre-trial detention hearing that secured Ms.



Isaacs' pretrial detention without bond. Defendant Buday continued and advanced criminal proceedings against Ms. Isaacs "without a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused [wa]s guilty of the offense with which he [wa]s charged." *Perez v. City of Opa-Locka*, No. 24-CV-23636, 2025 WL 2793758, at *11 (S.D. Fla. Aug. 21, 2025), appeal dismissed, No. 25-13300, 2025 WL 3677504 (11th Cir. Dec. 18, 2025).

119. The criminal proceedings terminated in Ms. Isaacs' favor on May 22, 2026, when the State of Florida filed a No Information dismissing all charges.

120. There was no probable cause to detain Ms. Isaacs without bond. The probable cause determination relied upon by the court at the bond/pre-trial detention hearing was based on Defendant Buday's false sworn testimony regarding fabricated vehicle damage. "Florida courts have made clear that the litigation privilege does not extend to malicious prosecution claims." *Perez v. City of Opa-Locka*, at *13.

121. Defendant Buday acted with malice, as evidenced by his knowing presentation of false testimony under oath, his reckless disregard of the truth, and his willingness to deprive an innocent person of her liberty based on knowingly false allegations.

122. Pursuant to Fla. Stat. § 768.28(9)(a), Defendant Buday acted in bad faith, with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property, for the same reasons set forth herein.

123. Defendant Buday's conduct satisfies the § 768.28(9)(a) exception to sovereign immunity, and he is personally liable to Ms. Isaacs for malicious prosecution.

124. Ms. Isaacs has suffered damages as described herein.



**Prayer for Relief – Count VI**

WHEREFORE, as to Count VIII, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Buday and award the following relief:

A. Compensatory damages in an amount to be determined at trial, including damages for emotional distress, mental anguish, humiliation, reputational harm, loss of liberty, and all other actual damages suffered;

B. Pre-judgment and post-judgment interest as allowed by law; and

C. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues so triable in this action.

Respectfully submitted,

**BRILL & RINALDI, THE LAW FIRM**
17150 Royal Palm Blvd., Suite 2
Weston, Florida 33326
Telephone No. (954) 876-4344
Facsimile No. (954) 384-6226
**David W. Brill, Esq.**
Florida Bar No. 0959560
Primary e-mail: david@brillrinaldi.com
Secondary e-mail: angely@brillrinaldi.com
**Joseph J. Rinaldi, Jr., Esq.**
Florida Bar No. 0581941
Primary e-mail: joe@brillrinaldi.com
Secondary e-mail: angely@brillrinaldi.com
**Rhonda Hartmann, Esq., Of Counsel**
Florida Bar No. 101583
Primary e-mail: rhonda@brillrinaldi.com
Secondary e-mail: angely@brillrinaldi.com

By:  s/ *David W. Brill*

**David W. Brill, Esq.**

